NOT FOR PUBLICATION

FILED

JUN 05 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No. CC-12-1430-TaPaMk |
| | ) |
| MARTIN PEMSTEIN and DIANA PEMSTEIN, | ) Bk. No. 2:12-bk-15900-RK |
| | ) |
| | ) Adv. No. 2:12-ap-01291-RK |
| Debtors. | ) |
| _____ | ) |
| HAROLD PEMSTEIN, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) MEMORANDUM[*] |
| | ) |
| MARTIN PEMSTEIN; DIANA PEMSTEIN, | ) |
| | ) |
| Appellees. | ) |
| _____ | ) |

Argued and Submitted on May 16, 2013
at Pasadena, California

Filed - June 5, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Robert N. Kwan, Bankruptcy Judge, Presiding

_____

Appearances:   Christopher L. Blank for Appellant Harold Pemstein; Alan Wayne Forsley of Fredman Knupfer Lieberman LLP for Appellees Martin Pemstein and Diana Pemstein

_____

Before: TAYLOR, PAPPAS, and MARKELL, Bankruptcy Judges.

_____

[*]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

## INTRODUCTION

This appeal presents the question whether defalcation under § 523(a)(4)[1] pertains solely to funds actually received by a fiduciary.[2] The bankruptcy court interpreted Ninth Circuit authority to so require. As a result, in plaintiff Harold Pemstein's nondischargeability action against debtor/defendant Martin Pemstein,[3] the bankruptcy court did not give preclusive effect to Harold's state court judgment against his business partner Martin for damages for breach of Martin's duty of care in the collection of rents. And, it also found that Harold failed otherwise to show that Martin committed defalcation because Harold had not offered sufficient evidence that Martin actually received rents for which he failed to account. We conclude that the bankruptcy court defined defalcation too narrowly. We also conclude that this error was not harmless, as we cannot otherwise affirm the decision. We, therefore, REVERSE the bankruptcy court's narrow application of § 523(a)(4) defalcation, we VACATE the denial of Harold's § 523(a)(4) claim,[4] and we REMAND for

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] Section 523(a)(4) excepts from discharge any debt: "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

[3] As the parties bear the same family name, we will refer to them herein by their given names. We intend no disrespect by such informality.

[4] The bankruptcy court also held that Harold failed to establish that Martin had committed fraud or larceny. On appeal, Harold does not argue that this holding was erroneous. Our

(continued...)

further findings with respect to the applicability of issue preclusion for defalcation under § 523(a)(4) consistent with this Memorandum or, if the bankruptcy court does not enter a judgment based on issue preclusion, for reconsideration by the bankruptcy court of its conclusions after trial.

On remand, the bankruptcy court also should be mindful of the Supreme Court's recent decision in <u>Bullock v. BankChampaign, N.A.</u>, 2013 U.S. Lexis 3521 (U.S. May 13, 2013).[5]  In <u>Bullock</u>, the Supreme Court resolved the split among the circuits regarding the mental state that must accompany defalcation under § 523(a)(4) (in doing so, it considered and spoke to the meaning of § 523(a)(4) "defalcation").  Although we reverse here based on the bankruptcy court's application of an incorrect legal interpretation of defalcation, and not based on the scienter standard articulated in <u>Bullock</u>, on remand the bankruptcy court should consider reopening evidence regarding intent, given that <u>Bullock</u> requires a heightened standard not previously required in the Ninth Circuit.

**FACTS**

Harold and Martin are brothers and were partners in a California general partnership, as well as directors of and shareholders in a small, closely-held family corporation.  The partnership owned industrial real property that it leased to the

_____

[4](...continued)
conclusion here solely pertains to the bankruptcy court's ruling regarding defalcation.

[5]  The Supreme Court granted certiorari after the bankruptcy court here rendered its decision, but while this appeal was pending.

corporation and from which the corporation ran the family business. Harold filed lawsuits against Martin in state court based on disputes that arose between them regarding the corporation and the partnership (the "State Court Action").

During the course of the litigation, the state court filed a Statement of Decision and Judgment in the State Court Action on June 30, 2005 (the "2005 Decision"). The 2005 Decision primarily ordered dissolution of the corporation and the partnership. On January 5, 2010,[6] Harold obtained a money judgment in the State Court Action against Martin in the amount of $696,218.03 (the "2010 Judgment").[7] The state court did not issue a statement of decision in connection with the 2010 Judgment, as neither party requested it.[8] The 2010 Judgment states as follows:

> The Court finds for the Plaintiff Harold Pemstein against Martin Pemstein finding that Martin Pemstein breached his duty of care to Harold Pemstein in the collection of rent on behalf of HMS Properties. The Court finds that the breach caused Harold Pemstein damages of $295,871.00 in principal and $400,347.03 in interest.

The State Court Complaint, in particular the fifth cause of action for breach of fiduciary duty against Martin as partner of

---

[6] The gap in time between the 2005 Decision and the 2010 Judgment was, at least in part, attributable to intervening bankruptcy petitions filed by both the corporation and the partnership.

[7] The bankruptcy court admitted the 2010 Judgment into evidence at the trial as Plaintiff's Trial Exhibit 2.

[8] The bankruptcy court admitted, at Martin's request, a copy of Plaintiff's Second Amended Complaint in the State Court Action dated December 1, 2001 ("State Court Complaint"). At trial the parties agreed that the State Court Complaint was the operative complaint on which the state court based the 2010 Judgment.

- 4 -

the partnership, cited statutory authority that would support findings that Martin had breached the duty of loyalty to Harold in the management and winding up of the partnership.[9] It also alleged facts that would support findings that Martin had breached both the duty of loyalty and the duty of care owed to Harold, although it did not include a citation to the statute defining the duty of care.[10] The 2010 Judgment was based on the finding that Martin had breached his duty of care to Harold. Under California law, this finding necessarily means that the state court found that Martin had engaged in "grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law" while acting as a trustee over partnership assets. Cal. Corp. Code § 16404(c). And, as specifically stated in the 2010 Judgment, that conduct related to the "collection of rent on behalf of" the partnership.

Harold, but apparently not Martin,[11] appealed from the 2010 Judgment.[12] The Court of Appeal resolved Harold's appeal by

---

[9] Specifically, California Corporations Code § 16404(b).

[10] Cal. Corp. Code § 16404(c).

[11] At the trial before the bankruptcy court, Martin testified that he filed bankruptcy because he was financially unable to obtain an appellate bond.

[12] Harold's appeal from the 2010 Judgment is not directly relevant to the issue on appeal here. Harold asserted that the trial court erred by refusing to allow him to amend his complaint to conform to evidence by adding a cause of action for breach of fiduciary duty. As discussed later in this Memorandum, Martin argues that the DCA Opinion confirms that the 2010 Judgment did not include a finding that Martin breached any fiduciary duty. We disagree. The DCA Opinion addresses Harold's attempt to add a breach of fiduciary duty claim in connection with Harold's argument and alleged evidence proving that Martin had, at one
(continued...)

affirming the 2010 Judgment in an unpublished opinion on May 16, 2011 ("DCA Opinion").[13]

Martin and his wife Diana Pemstein filed their joint petition under chapter 11 on April 28, 2010, and Harold filed his complaint objecting to discharge and dischargeability thereafter ("Adversary Complaint"). Pemstein v. Pemstein (In re Pemstein), 476 B.R. 254, 256 (Bankr. C.D. Cal. 2012). The Adversary Complaint incorporated the 2010 Judgment. Pursuant to the first cause of action, Harold sought an exception to discharge under § 523(a)(4), solely as to Martin, on multiple alleged factual grounds. All such grounds were based on alleged breaches of fiduciary duties Martin owed to Harold as his partner in the partnership. The Adversary Complaint also asserted that Martin was liable to Harold based on larceny and conversion of rental income and based on fraud or defalcation by Martin's violation of his duty of loyalty and the duty of care owed to Harold as his partner. At paragraphs 23 and 24 of the Adversary Complaint, Harold virtually quoted, without citation, § 16404(b) & (c) of the California Corporations Code:

---

[12](...continued)
point in time, put the partnership into bankruptcy to avoid the state court's dissolution order and, by doing so without Harold's consent, had breached his fiduciary duty and harmed Harold. The DCA Opinion does not address the state court's finding that Martin breached his duty of care to Harold, a fiduciary duty owed by partners to one another in a California partnership. See, Cal. Corp. Code § 16404(a).

[13] The record is silent as to if or when the bankruptcy court granted relief from the stay to allow Harold's appeal to go forward post-petition. The bankruptcy court admitted a copy of the DCA Opinion into evidence at trial and, thus, was apparently aware of the prosecution of the appeal, at least after the fact.

23.  A partner's duty of loyalty to the partnership and the other partners includes all of the following:

(A)  To account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property or information, including the appropriation of a partnership opportunity.

(B)  To refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership.

(C)  To refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership.

24.  A partner's duty of care to the partnership and the other partners in the conduct and winding up of the partnership business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

The bankruptcy court conducted a trial on November 30, 2011.[14]  It requested or allowed three rounds of post-trial briefs on specifically identified legal questions regarding defalcation under § 523(a)(4).[15]  The bankruptcy court twice heard post-trial oral arguments.  Thereafter, it issued its Memorandum Decision denying all claims under the Adversary Complaint and entered judgment in favor of both Debtors on August 2, 2012.  Harold timely filed his notice of appeal. Harold appeals only from the bankruptcy court's denial of his

---

[14]  Although Harold was represented by counsel when he filed the Adversary Complaint and for all post-trial briefing and argument, he presented his direct testimony at trial by declaration filed pro se and participated in the trial in pro per.

[15]  The record indicates that at least twice the bankruptcy court stated or issued tentative rulings in Harold's favor on the § 523(a)(4) defalcation cause of action.

§ 523(a)(4) claim;[16] he primarily challenges the bankruptcy court's interpretation and application of the standard for defalcation, its refusal to apply issue preclusion, and its conclusion that Harold failed to carry his burden of proof at trial.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I) & (J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in determining that Harold's § 523(a)(4) defalcation claim fails because neither the 2010 Judgment nor evidence admitted at trial established that Martin actually received rents for which he failed to account?

## STANDARD OF REVIEW

In reviewing a bankruptcy court's dischargeability determination, we review its findings of fact for clear error and its conclusions of law de novo. Oney v. Weinberg

---

[16] In Harold's Notice of Appeal he appealed broadly from all orders and rulings adverse to him, including denial of his motion for summary judgment ("MSJ"), and all adverse evidentiary rulings made in connection with the MSJ and at trial. Harold's Statement of Issues on Appeal identified thirteen issues that pertain to rulings on the MSJ or at or after trial regarding § 523(a)(4) and § 523(a)(6), but no issues regarding the § 727 rulings. In Harold's Opening Brief here, he further reduces the issues and now appeals only trial rulings on his § 523(a)(4) claim. On appeal, both parties address only the bankruptcy court's rulings regarding defalcation by a fiduciary. We therefore consider all other issues identified in the Notice of Appeal and the Statement of Issues on Appeal as waived by Harold. Padgett v. Wright, 587 F.3d 983, 986 n.2 (9th Cir. 2009)(per curium)(appellate courts "will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief.").

(In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009). The availability of issue preclusion is a question of law, which we review de novo. Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193, 1198 (9th Cir. 2012). If issue preclusion is available, the decision to apply it is reviewed for abuse of discretion. Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007). A bankruptcy court abuses its discretion if it bases a decision on an incorrect legal rule, or if its application of the law was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc).

**DISCUSSION**

A creditor objecting to the dischargeability of its claim bears the burden of proving, by a preponderance of the evidence, that the particular debt falls within one of the exceptions to discharge enumerated in section 523(a). Grogan v. Garner, 498 U.S. 279, 286-91 (1991). The bankruptcy court here correctly allocated to Harold the burden to prove that Martin was acting in a fiduciary capacity and that, while doing so, he committed defalcation. In re Pemstein, 476 B.R. at 257.

Harold cites as error the bankruptcy court's placement of the burden of proof on him at trial.[17] Harold's argument on this point consists entirely of quotations from case authority with no

---

[17] Harold also argues on appeal that the bankruptcy court denied him due process by ruling that he could not re-try facts from the State Court Action. Nothing in the record indicates that the bankruptcy court made such a ruling. Nor did Harold present any argument directed to his due process issue. We, thus, consider the issue waived.

discussion. As confirmed during oral argument, Harold argues that the burden of proof should have shifted to Martin at some point to show that he had properly accounted. See <u>Otto v. Niles (In re Niles)</u>, 106 F.3d 1456, 1462 (9th Cir. 1997) (burden is placed on the fiduciary to render an accounting, "once the principal has shown that funds have been entrusted to the fiduciary and not paid over or otherwise accounted for"). The burden never shifted here because the bankruptcy court too narrowly defined defalcation.

Harold also bears the burden of proof for application of issue preclusion. <u>Honkanen v. Hopper (In re Honkanen)</u>, 446 B.R. 373, 382 (9th Cir. BAP 2011). To meet this burden, Harold was required to pinpoint "the exact issues litigated in the prior action and introduce[] a record revealing the controlling facts." <u>Id.</u> As a <u>pro se</u> litigant at trial, Harold provided the 2005 Decision, the 2010 Judgment, and his direct testimony by declaration. Martin offered the State Court Complaint and the DCA Opinion, as well as his direct testimony by declaration. Harold testified that the dispute between Martin and him in the state court concerned how much rent was due him from Martin for the period of time Martin was in sole possession of partnership properties. In effect, the bankruptcy court found that Harold did not meet this burden. The bankruptcy court, however, did not perform a complete issue preclusion analysis, given its view of defalcation.

**Issue preclusion.**

Federal courts must give "full faith and credit" to judgments of state courts. 28 U.S.C. § 1738. As a matter of

- 10 -

full faith and credit, the federal court must apply the forum state's law of issue preclusion. Bugna v. McArthur (In re Bugna), 33 F.3d 1054, 1057 (9th Cir. 1994). These principles of issue preclusion apply equally in § 523(a) proceedings. Grogan v. Garner, 498 U.S. at 286-291.

California courts will apply issue preclusion only if certain threshold requirements are met, and then only if application of preclusion furthers the public policies underlying the doctrine. There are five threshold requirements:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

Id. (internal citations omitted).

Here, the bankruptcy court decided it could not apply issue preclusion in connection with the defalcation claim because it determined that the issue decided in the State Court Action was not identical to the question of whether Martin committed defalcation while acting in a fiduciary capacity. Pemstein, 476 B.R. at 258. In making this determination, the bankruptcy court utilized an inappropriately narrow definition of defalcation.

**Section 523(a)(4) defalcation by a fiduciary.**

As relevant here, section 523(a)(4) excepts from discharge debts incurred by fiduciaries as a result of their defalcations. It also excepts debts incurred through embezzlement, or larceny

- 11 -

regardless of who embezzled or committed larceny. Case law makes clear that the broad, general definition of fiduciary — a relationship involving confidence, trust and good faith — is inapplicable in the dischargeability context. Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986). Instead, § 523(a)(4) nondischargeability results only where, among other things, the fiduciary relationship between the debtor and the creditor arises in relation to an express or technical trust that pre-dates the alleged defalcation. Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996); Runnion v. Pedrazzini (In re Pedrazzini), 644 F.2d 756, 758 (9th Cir. 1981). In short, under section 523(a)(4), it "is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio." Davis v. Aetna Acceptance Co., 293 U.S. 328, 333 (1934); In re Honkanen, 446 B.R. at 378-379. Thus, section 523(a)(4) does not render a claim nondischargeable when the fiduciary duty pre-dates the defalcation, and the only trust is a constructive, resulting, or implied trust that arises only after the defalcation. Blyler v. Hemmeter (In re Hemmeter), 242 F.3d 1186, 1189-90 (9th Cir. 2001). Whether the debtor was acting in a fiduciary capacity within the meaning of § 523(a)(4) is a question of federal law. Lewis, 97 F.3d at 1185. State law, however, determines whether the requisite trust relationship exists. Id.

Under California law, "all partners [are] trustees over the assets of the partnership." Ragsdale, 780 F.2d at 796; and see Cal. Corp. Code § 16404(b)(1) (partner has a duty to hold as trustee any "property, profit, or benefit derived" from

- 12 -

partnership business or use of partnership property). And accordingly, "California partners are fiduciaries within the meaning of § 523(a)(4)." Ragsdale 780 F.2d at 796-97. The bankruptcy court here found "no factual dispute that Martin was acting in a fiduciary capacity as a partner of Harold in HMS Properties, a family business." In re Pemstein, 476 B.R. at 257. And for purposes of issue preclusion, on its face the 2010 Judgment was based on Martin's breach of his duty of care to Harold in Martin's actions in connection with partnership business.

The critical question here is whether the 2010 Judgment was based on Martin's defalcation. The bankruptcy court based its negative answer to this question on the omission from the 2010 Judgment of any statement that "Martin had failed to account for rents *he received*." Id. (emphasis in original). Our analysis of existing court decisions, supported by the Supreme Court's discussion in the recent Bullock decision, leads us to conclude that actual receipt of funds subject to a trust is not necessary to establish defalcation.

The bankruptcy court relied on a definition of defalcation articulated by the Ninth Circuit, quoting Black's Law Dictionary, in In re Lewis: "Defalcation is defined as the 'misappropriation of trust funds or money held in any fiduciary capacity; [t]he failure to properly account for such funds.'" 97 F.3d at 1186 (citation omitted). From this definition, the bankruptcy court focused largely on the words "misappropriation" and "funds."

In effect, the bankruptcy court's focus negates any difference between defalcation and embezzlement under

- 13 -

§ 523(a)(4). Embezzlement, however, is nondischargeable under § 523(a)(4) whether or not committed by someone acting in a fiduciary capacity. To equate defalcation with embezzlement, thus, would improperly render part of § 523(a)(4) mere surplusage. See Bullock v. BankChampaign, N.A., 2013 U.S. Lexis 3521 at *14. Moreover, defalcation does not require conversion, whereas embezzlement does. Id. ("'Defalcation,' as commonly used (hence as Congress might have understood it), can encompass a breach of fiduciary obligation that involves neither conversion, nor taking and carrying away another's property [i.e. larceny], nor falsity [i.e. fraud]").

And, the bankruptcy court missed the broader meaning of defalcation actually applied in Lewis, where the Ninth Circuit held that the debtors' failure to "provide a complete accounting of the funds [plaintiff] invested in the partnership, or of the partnerships [sic] assets generally, and commingl[ing] [of] his investment with their other funds" fit within the legal definition of defalcation. Id. at 1187 (emphasis added). Defalcation, therefore, is broader than the misappropriation of funds or mere bookkeeping malfeasance. Defalcation includes the failure by a fiduciary to account for money or property that has been entrusted to him. Woodworking Enter., Inc. v Baird (In re Baird), 114 B.R. 198, 204 (9th Cir. BAP 1990); and see In re Hemmeter, 242 F.3d at 1191 (the Ninth Circuit has "as yet not fully defined the contours of defalcation under § 523(a)(4)"); In re Niles, 106 F.3d at 1462 (an agent who comes into possession of money or other thing for the principal must account for it).

- 14 -

Whether the 2010 Judgment was based on Martin's receipt of rents and a failure to account for those rents or was based on rents from partnership property that he should have received but failed to collect, the state court determined that Martin caused his partner, Harold, damages of $295,871.00 in principal and $400,347.03 in interest. Based on our review of the record,[18] we can infer, at a minimum, that the state court found that Martin breached a fiduciary duty to Harold that negatively impacted Harold's right to receive rents from the partnership's property. The right to receive rents was part of the bundle of rights in the real property owned by the partnership. See Black's Law Dictionary 1335 (9th ed. 2009)(property is the "right to possess, use, and enjoy a determinate thing. . .; the right of ownership . . . . Also termed bundle of rights.") This breach of fiduciary duty may constitute defalcation under § 523(a)(4).[19]

The 2010 Judgment specifically states the finding that Martin "breached his duty of care to Harold Pemstein in the collection of rent on behalf of HMS Properties." We may infer that in making this finding, the state court necessarily decided against Martin on the fifth cause of action in the operative complaint, the only claim in the State Court Complaint against

[18]   At trial, the bankruptcy court admitted into evidence the State Court Complaint (Defendant's Trial Ex. B), the 2005 Decision (Plaintiff's Trial Ex. 1), the 2010 Judgment (Plaintiff's Trial Ex. 2), and the DCA Opinion (Defendant's Trial Ex. A). See Hr'g Tr. (November 30, 2011) at iii.

[19]   See Brown v. Kenney (In re Kenney), 2012 Bankr. LEXIS 4127 *11-12 (Bankr. N.D. Cal. 2012) (use of the term "defalcation" is not required for issue preclusion purposes, "[i]t is necessary only that the prior decision establish facts necessary to except the debt from discharge under *section 523"*) (emphasis in original).

Martin for breach of fiduciary duty as Harold's partner. The wrongful conduct alleged there includes failing to account to the partnership and to "hold as trustee the properties, profits, and benefits" derived therefrom (State Court Complaint at 12-13, para. f); dealing with partnership properties in a manner adverse to Harold (Id. at 13, para. g); and "refusing to set market rents" for partnership properties rented to the family corporation, from which Harold had been excluded (Id. at 13. para. k).

This inference is supported by our review of the DCA Opinion. In the DCA Opinion, the Court of Appeal recited the history of the litigation between these parties, and in summary stated that after the 2005 Decision, "[t]he only issue remaining was the equitable accounting for rents Harold claimed Martin owed him." DCA Opinion at 3. It then quoted the state court's minute order dated December 14, 2009, wherein the state court prefaced its oral ruling after the multi-day trial on the State Court Complaint by stating that the only issue then remaining was "Harold's . . . equitable claims for RENT between himself and Martin . . . regarding Martin['s] stewardship of HMS on behalf of the partnership . . .." Id. at 3-4. Thus, as the 2010 Judgment was the result of Martin's failure to account for partnership property entrusted to him, the bankruptcy court utilized an incorrect legal rule when it denied the 2010 Judgment issue preclusive effect, based on the assumption that defalcation resulted only when the fiduciary fails to account for cash actually received.

**Section 523(a)(4)'s scienter requirement.**

In its decision, the bankruptcy court opined that the 2010 Judgment may have been based on a finding of "negligence," which the bankruptcy court thought insufficient to establish defalcation. In re Pemstein, 476 B.R. at 259. We find no support in the record for a finding of simple negligence. The State Court Complaint contained no negligence cause of action. And, at the time the bankruptcy court rendered its decision, at least in the Ninth Circuit, "the term 'defalcation' include[d] innocent, as well as intentional or negligent defaults." In re Lewis, 97 F.3d at 1186 (citation omitted). Thus, the bankruptcy court's concern that Martin may have been found only negligent, even if true, did not support the bankruptcy court's ruling under the standard in effect at that time in the Ninth Circuit.

We acknowledge, however, that the Bullock decision abrogates the Ninth Circuit's previous standard that omitted a scienter element for § 523(a)(4) defalcation, and the bankruptcy court's analysis on remand must reflect the change. In brief, Bullock instructs us that the necessary state of mind for § 532(a)(4) defalcation is "one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." Bullock v. BankChampaign, N.A., 2013 U.S. Lexis 3521, *5.

In the 2010 Judgment, the term "duty of care" applies to one of the two statutory fiduciary duties of partners to one another and the partnership as enunciated in the California Corporations Code. See Cal. Corp. Code § 16404(c). This duty required Martin

- 17 -

to refrain from "engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law" in the conduct and winding up of the partnership business. Thus, in light of this statutory provision, the state court necessarily found that Martin's collection of rents was no less than "grossly negligent or reckless conduct," "intentional misconduct," or "a knowing violation of law." Id. Whether such findings, made in the context of the civil litigation and tort concepts that were before the state court, satisfy the heightened standard established in Bullock is not for this Panel to determine for the first time as a reviewing court and must be determined by the bankruptcy court on remand.

**CONCLUSION**

Based on the foregoing, we conclude that the bankruptcy court erred when it ruled that Harold's § 523(a)(4) claim failed because Harold did not prove that Martin actually received funds for which he failed to account. We determine that this error was not harmless. We, therefore, REVERSE the bankruptcy court's narrow application of § 523(a)(4) defalcation, we VACATE the denial of Harold's § 523(a)(4) claim, and we REMAND for further findings regarding issue preclusion or, if found to be otherwise not applicable, for determinations of the sufficiency of evidence at trial in light of our conclusions herein, or for further consideration of evidence as the bankruptcy court deems necessary in light of the intervening Supreme Court decision in Bullock.