**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-15-1019-KuPeTa |
| ) | |
| MARTIN PEMSTEIN and DIANA ) | Bk. No.   12-15900-RK |
| PEMSTEIN, ) | |
| ) | Adv. No.  12-01291-RK |
| Debtors. ) | |
| _____) | |
| ) | |
| MARTIN PEMSTEIN, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| HAROLD PEMSTEIN, ) | |
| ) | |
| Appellee. ) | |
| _____) | |

Argued and Submitted on July 23, 2015
at Pasadena, California

Filed – September 21, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Robert Kwan, Bankruptcy Judge, Presiding

_____

Appearances:    Appellant Martin Pemstein argued pro se;
                Christopher L. Blank argued for appellee Harold
                Pemstein.

_____

Before: KURTZ, PERRIS[**] and TAYLOR, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[**]Hon. Elizabeth L. Perris, United States Bankruptcy Judge for the District of Oregon, sitting by designation.

**INTRODUCTION**

On remand from an appeal to this Panel, the bankruptcy court excepted from discharge under 11 U.S.C. § 523(a)(4)[1] Martin Pemstein's 2010 judgment debt to his brother Harold Pemstein.[2] Martin claims that, in light of the purported preclusive effect of a 2005 judgment and a 2006 stipulation, the bankruptcy court should not have given preclusive effect to the 2010 judgment, which held Martin liable for breach of his fiduciary duty to Harold in the amount of $696,218.03. But Martin has not explained why we should depart from the well-established rule that, when the preclusive effect of two or more rulings would lead to contradictory results, the court before whom the current action is pending should give preclusive effect to the last previous judgment entered. In this case, that is the 2010 judgment.

Accordingly, we AFFIRM the bankruptcy court's nondischargeability judgment.

**FACTS**

As set forth in our prior decision in Pemstein v. Pemstein (In re Pemstein), 492 B.R. 274 (9th Cir. BAP 2013), Harold and Martin are brothers and were partners in a California general partnership known as HMS Holding Company. They also owned and controlled, with others, a closely-held corporation known as the

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2]For ease of reference, we refer to Harold and Martin by their first names. No disrespect is intended.

Pemma Corporation. HMS owned several parcels of real property, which it leased to Pemma, and Pemma used the property to operate its business as a wholesaler of automotive transmission parts.

In 1998, the always-volatile working relationship between Harold and Martin completely fell apart. As the culmination of a battle for corporate control, Martin and his allies on Pemma's board of directors succeeded in ousting Harold from his role as an officer and director of Pemma. In fact, as of October 26, 1998, Harold ceased to have any role in the management or governance of either HMS or Pemma, even though he continued to be a 50% partner in HMS and still held roughly one-third of Pemma's issued stock.

Since then, the parties have engaged in nearly two decades of litigation in both the state courts and in the bankruptcy courts. In 2005, Harold obtained a state court judgment ordering the dissolution of HMS and Pemma. Later in 2005, in an attempt to block the forced dissolution of these entities, Martin filed chapter 11 bankruptcy petitions on behalf of both HMS and Pemma. However, this tactic ultimately proved unsuccessful. In May 2006, a chapter 11 trustee was appointed in both the HMS and Pemma bankruptcy cases, and in 2007, the Pemma bankruptcy case was converted to chapter 7, and the HMS bankruptcy case was dismissed.[3]

---

[3]Because neither of the parties provided us with excerpts of record containing all of the documents we needed to fully consider the issues raised on appeal, we have exercised our discretion to review the bankruptcy court's case and adversary dockets. We can take judicial notice of the contents of these
(continued...)

3

In January 2010, the Orange County Superior Court entered judgment against Martin for $696,218.03 based on Harold's claim that Martin owed him collected and uncollected rents from HMS's lease of the real property to Pemma. The state court did not issue a statement of decision in support of the 2010 judgment, but the judgment itself provided as follows:

> The Court finds for the Plaintiff Harold Pemstein against Martin Pemstein finding that Martin Pemstein breached his duty of care to Harold Pemstein in the collection of rent on behalf of HMS Properties. The Court finds that the breach caused Harold Pemstein damages of $295,871.00 in principal and $400,347.03 in interest.

Judgment (Jan. 5, 2010) at 1:25-28.

In April 2010, Martin and his wife Diana commenced their joint personal chapter 11 case, and in April 2012 the bankruptcy court confirmed their chapter 11 plan. Meanwhile, Harold timely commenced an adversary proceeding against both Martin and Diana seeking to except from discharge the 2010 judgment debt under §§ 523(a)(4) and (a)(6). Harold's adversary complaint also objected to their discharge under §§ 727(a)(2)(A) and (a)(3). In August 2012, the bankruptcy court entered a judgment after trial ruling against Harold on all claims. Among other things, the bankruptcy court concluded that neither the 2010 judgment nor Harold's evidence at trial established that Martin actually had received rents for which he failed to account, and consequently there was no defalcation within the meaning of § 523(a)(4).

---

[3](...continued) dockets and the imaged documents attached thereto. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mrtg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

4

On appeal, we vacated the bankruptcy court's § 523(a)(4) ruling and remanded for further proceedings. In re Pemstein, 492 B.R. at 276-77. We held that, after taking into account Harold's operative state court complaint and the language of the 2010 judgment, the Orange County Superior Court necessarily found that Martin was liable for breach of his fiduciary duty to Harold in the amount of $696,218.03. Id. at 282-83; see also id. at 278. We further held that the bankruptcy court erred when it concluded that this breach of fiduciary duty could not qualify as a defalcation within the meaning § 523(a)(4). We reasoned that, regardless of whether the 2010 judgment was based on rents Martin received but failed to account for or based on rents he should have received but did not collect, either conduct fell within § 523(a)(4)'s definition of defalcation. We remanded for the bankruptcy court to decide whether, and to what extent, issue preclusion should be applied to the Orange County Superior Court's breach of fiduciary duty finding. We also remanded for the bankruptcy court to decide whether to allow the presentation of additional evidence regarding Martin's state of mind in committing the breach of fiduciary duty in light of Bullock v. BankChampaign, N.A., 133 S. Ct. 1754, 1759-60 (2013), which held that defalcation requires bad faith, moral turpitude, intentional wrongfulness, or a heightened state of recklessness.

On remand, the bankruptcy court permitted the parties to present additional evidence and thereafter entered findings of fact and conclusions of law in which it ruled: (1) that all of the elements for issue preclusion applied to the 2010 judgment; (2) that the only issue not resolved by the 2010 judgment was

5

Martin's state of mind in committing his breach of fiduciary duty; and (3) that Harold had established by a preponderance of the evidence that Martin intentionally had deprived Harold of his share of the collected and uncollected rents from HMS's real property.

Martin filed a reconsideration motion, which in essence sought amendment of the bankruptcy court's findings of fact and conclusions of law. The bankruptcy court denied the motion by order entered on January 6, 2015.[4] On that same day, the bankruptcy court entered judgment against Martin under § 523(a)(4) excepting the 2010 judgment debt from discharge. Martin timely filed his notice of appeal on January 20, 2015.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court correctly determine that Martin's indebtedness to Harold was nondischargeable under § 523(a)(4)?

**STANDARD OF REVIEW**

We review de novo the bankruptcy court's legal conclusions, and we review for clear error its factual findings. <u>Oney v. Weinberg (In re Weinberg)</u>, 410 B.R. 19, 28 (9th Cir. BAP 2009),

---

[4]Martin has not specifically argued on appeal that the bankruptcy court erred in denying his reconsideration motion. On the other hand, Martin has asserted on appeal several of the same arguments that he made in his reconsideration motion. To the extent Martin has reiterated the same arguments in his opening appeal brief, we address them in the discussion section, below.

6

aff'd, 407 Fed.Appx. 176 (9th Cir. 2010). Findings of fact are clearly erroneous only if they are illogical, implausible, or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

We utilize a two-step process to review the bankruptcy court's issue preclusion ruling. First, we review de novo the bankruptcy court's determination regarding the availability of issue preclusion. Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007); Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 823 (9th Cir. BAP 2006). And second, if issue preclusion was available, we then review the bankruptcy court's application of it for an abuse of discretion. In re Lopez, 367 B.R. at 103; In re Khaligh, 338 B.R. at 823.

A bankruptcy court abuses its discretion only when it applies an incorrect legal rule or when its application of the correct legal rule is illogical, implausible, or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

**DISCUSSION**

Under § 523(a)(4), debts for fraud or defalcation while acting in a fiduciary capacity are nondischargeable. To establish a claim under § 523(a)(4) for fiduciary defalcation, the plaintiff must show that the defendant committed a defalcation and that the defendant was serving in a fiduciary capacity at the time of the defalcation. Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 378 (9th Cir. BAP 2011).

The terms "defalcation" and "fiduciary capacity" are defined narrowly for nondischargeability purposes. See, e.g., Bullock,

7

133 S.Ct. at 1759-60 (holding that defalcation under § 523(a)(4) requires a culpable state of mind); Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1125 (9th Cir. 2003) (holding that the broad definition of fiduciary – someone in whom a special trust and confidence has been reposed – does not apply under § 523(a)(4)). The narrow construction of these terms is consistent with the notion that exceptions to discharge must be narrowly construed. Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992); see also Bullock, 133 S. Ct. at 1760-61 (stating that exceptions to discharge "should be confined to those plainly expressed.").

The applicable, narrow definition of the term "fiduciary capacity" requires the creditor to demonstrate the existence of an express or technical trust that was created before and without reference to the wrongdoing from which the liability arose. In re Cantrell, 329 F.3d at 1125. Additionally, when the § 523(a)(4) claim rests on a trust imposed by statute, the statute must identify both the fiduciary's duties and the trust's property. In re Honkanen, 446 B.R. at 379; Evans v. Pollard (In re Evans), 161 B.R. 474, 477-78 (9th Cir. BAP 1993).

Here, there is no legitimate dispute that, under California law, Martin, as Harold's partner, owed Harold fiduciary duties with respect to the management of HMS's assets, which consisted of the real property and any rents or profits derived therefrom. In re Pemstein, 492 B.R. at 281 (citing Cal. Corp. Code § 16404(b)(1) and Ragsdale v. Haller, 780 F.2d 794, 796-97 (9th Cir. 1986)). Nor is there any genuine doubt that California law explicitly sets forth specific fiduciary duties that one partner

8

owes to another with respect to partnership assets. Cal. Corp. Code § 16404(b)(1); Ragsdale, 780 F.2d at 796-97.

Martin claims that, in light of the 2006 appointment of a chapter 11 trustee in HMS's bankruptcy case, at least a portion of the damages the Orange County Superior Court awarded based on his breach of his duty of care were attributable to a period when he no longer had control over the partnership or its assets and, hence, no longer was acting as a fiduciary. True, the brief in lieu of closing argument Harold filed in the state court in 2009 confirms that a portion of the damages Harold sought and obtained were incurred while the chapter 11 trustee was in control of HMS's assets – between May 2006 (when the chapter 11 trustee was appointed) and September 2006 (when the chapter 11 trustee sold the HMS real property).[5] But the state court case included allegations that are consistent with a determination that Martin's breach of his duty to Harold made collection of an appropriate level of rent difficult and, possibly, impossible; damages flowing from his breach of fiduciary duty could have continued during the brief period that the chapter 11 trustee controlled the property. Thus, this argument falls far short of

---

[5]The 2009 brief in lieu of closing argument contained Harold's detailed calculation of damages and interest arising from rents that were or should have been collected by Martin on behalf of HMS. As pointed out by the bankruptcy court in its October 17, 2014 findings of fact and conclusions of law at paragraphs 13-17, the Orange County Superior Court adopted Harold's calculations in awarding Harold: (a) $103,809 attributable to Harold's 50% share of uncollected rents (referred to in the calculations as "rental shortfalls"); (2) $192,062 attributable to Harold's 50% share of collected rents; and (3) $400,347.03 attributable to prejudgment interest.

9

establishing error by the state court in its damages calculation.

In any event, we reject Harold's argument regarding the chapter 11 trustee because the argument ignores the preclusive effect of the 2010 judgment. We must give "full faith and credit" to the 2010 judgment. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001) (citing 28 U.S.C. § 1738). This means that we must give it the same preclusive effect as it would be afforded by state courts in California. Id. In determining to give preclusive effect to the 2010 judgment, the bankruptcy court correctly identified the five threshold factors California courts look at to decide whether issue preclusion can be applied:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

Lucido v. Superior Court, 51 Cal.3d 335, 341 (1990). Accord, In re Pemstein, 492 B.R. at 281.

Martin on appeal attacks only one aspect of the bankruptcy court's issue preclusion determination. Martin argues that the 2010 judgment did not include any finding that Martin breached his fiduciary duty. According to Martin, the finding in the 2010 judgment that Martin breached his duty of care in the collection of rents is not the same as finding that Martin breached his fiduciary duty. We disagree. As we explained at length in our prior decision involving the Pemsteins, when one considers

10

together the language of the 2010 judgment, the contents of Harold's operative complaint, and the other documents from the state court litigation presented to the bankruptcy court at the time of trial, we can infer (and only can infer) that the Orange County Superior Court found that Martin breached his fiduciary duty to Harold with respect to Martin's collection of rents on behalf of HMS and that this breach resulted in $295,871.00 in damages and the accrual of $400,347.03 in interest.[6]

Instead of arguing against the application of issue preclusion, Martin makes his own divergent preclusion arguments. He contends that the state court's 2005 statement of decision and judgment directing the dissolution of Pemma and HMS precluded the state court from later issuing the 2010 judgment for damages and interest arising from collected and uncollected rents.  In support of this argument, Martin relies upon the following language in the 2005 statement of decision and judgment:

> Pursuant to Appellate Court direction, this Statement of decision is a final equitable order as to all the proceedings and all causes of action in these consolidated proceedings.

Statement of Decision and Judgment (June 30, 2005) at 2:23-25. Based on this language, Martin contends that the state court should not have entered a subsequent judgment – the 2010 judgment – and should not have awarded Harold any damages in that

---

[6]Our prior determination regarding the issue decided by the Orange County Superior Court is law of the case, and we are not aware of any grounds for applying any exception to the law of the case doctrine. See generally Am. Express Travel Related Servs. Co. v. Fraschilla (In re Fraschilla), 235 B.R. 449, 454 (9th Cir. BAP 1999), aff'd, 242 F.3d 381 (9th Cir. 2000)(table)(explaining doctrine and its exceptions).

11

judgment. In turn, Martin further posits that the bankruptcy court should have been bound by the 2005 statement of decision and judgment instead of the 2010 judgment.

Martin's preclusion argument stands established preclusion law on its head. As the Ninth Circuit has stated, as between two or more conflicting judgments, the last judgment previously entered is the one that needs to be given preclusive effect. Americana Fabrics, Inc. v. L & L Textiles, Inc., 754 F.2d 1524, 1529-30 (9th Cir. 1985). Americana explained the reasoning behind this rule, as follows:

> This is the rule of "last in time." The formal rationale behind the rule is that the implicit or explicit decision of the second court, to the effect that the first court's judgment is not res judicata, is itself res judicata and therefore binding on the third court. The decision is not binding because it is correct; it is binding because it is last. The rule furthers the purposes of res judicata because it "end[s] the chain of relitigation . . . by stopping it where it [stands]" after entry of the second court's judgment, and thereby discourages relitigation in a third court. If an aggrieved party believes that the second court erred in not giving res judicata effect to the first court's judgment, then the proper avenue of redress is appeal of the second court's judgment, not collateral attack in a third court.

Id. at 1530 (citations and footnote omitted). The last in time rule applies to both federal judgments as well as California judgments. See id. at 1530 n.2; see also Standard Oil Co. of Cal. v. John P. Mills Org., 3 Cal. 2d 128, 139 (1935) ("In case of two conflicting judgments the later in time controls.").[7]

---

[7]Americana further made it clear that the last in time rule applies to both issue preclusion doctrine and claim preclusion doctrine. Id. at 1530 ("It follows, therefore, [from the last in time rule] that the district court should have given res judicata (continued...)

12

Martin makes a similar preclusion argument with respect to a stipulation the bankruptcy court approved by order entered October 27, 2006, in the jointly administered bankruptcy cases of HMS and Pemma. Martin asserts that, pursuant to this stipulation and order, Harold waived his right to seek and obtain the damages award granted in the 2010 judgment. Martin particularly relies on the following language from the stipulation:

> The only additional rent claim that HMS is reserving is the right to claim that an amount in excess of 60¢ a square foot that Pemma is or was obligated to pay to HMS was too low and Pemma, as a matter of law, was obligated to pay a greater sum.

Stipulation (October 27, 2007) at 4:18-22.

In light of this language in the stipulation, Martin urges that the state court should not have entered the 2010 judgment and the bankruptcy court should not have relied on the 2010 judgment.

In its January 2015 order denying Martin's reconsideration motion, the bankruptcy court rejected this argument, holding that the 2006 stipulation did not limit Harold's right to seek damages from Martin for collected and uncollected rents for the period between November 1998 and September 2006. We agree with the bankruptcy court on this point. Having reviewed the entirety of the stipulation, we perceive nothing establishing or even suggesting that the parties intended the stipulation to affect Harold's right to seek damages against Martin for breach of fiduciary duty. Regardless, even if we were to conclude that the

[7](...continued) effect to the SDNY's order. **That order has both a claim-preclusive and issue-preclusive effect on the action in the district court**.").

13

parties intended for Harold to waive all claims against Martin for collected and uncollected rents, and even if we were to agree with Martin that the order approving the stipulation generally afforded the terms of the stipulation with preclusive effect, Americana directs us and the bankruptcy court to give preclusive effect to the 2010 judgment and not to the 2006 stipulation.

As for the bankruptcy court's finding made on remand that Martin intentionally deprived Harold of his share of collected and uncollected rents, Martin devotes very little of his opening appeal brief attempting to convince us that the bankruptcy court's intent finding was clearly erroneous. In fact, his argument regarding intent appears to be limited to a single conclusory sentence: "There was no creditable evidence determined during the trial that would establish that Martin intentionally failed to collect rent, let alone any evidence that there was uncollected rents at all." Aplt. Op. Br. at p. 15.

We disagree. In making its intent finding, the bankruptcy court cited to evidence, most of it Martin's own testimony, demonstrating the following: (1) Martin had a background and college course work in accounting and experience as a staff accountant; (2) during (most of) the relevant period of time, Martin was in charge of the operations and finances of both HMS and Pemma, and had "sole and actual control" of HMS's collection of rents; and (3) Martin knowingly and intentionally acted for the benefit of Pemma and to the detriment of HMS and Harold in the manner he collected and spent rents owed to HMS and Harold. See Findings of Fact and Conclusions of Law (Oct. 17, 2014) at ¶¶ 7-11.

14

Martin has not included in his excerpts of record a copy of the transcript containing the testimony on which the bankruptcy court relied in making these findings, but we have located the relevant transcript ourselves by accessing the bankruptcy court's docket. Martin has not pointed us to any evidence that contradicts the court's intent finding. Furthermore, even if the evidence also could have supported a finding that Martin lacked the requisite intent, we cannot hold that the bankruptcy court's inference of intent was clearly erroneous. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.").

The only other argument that Martin makes in his opening brief concerns the Rooker-Feldman doctrine. That doctrine is of extremely limited application. It prevents federal courts from exercising jurisdiction over cases brought by "state-court losers" seeking to challenge "state-court judgments rendered before the [federal] court proceedings commenced." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). In light of the 2010 judgment and our issue preclusion analysis, supra, Harold did not lose in the state court. To the contrary, he won. Instead of challenging the 2010 state court judgment, Harold seeks to have the debt arising from it declared nondischargeable. Accordingly, the Rooker-Feldman doctrine does not aid Martin's appeal.

**CONCLUSION**

For the reasons set forth above, we AFFIRM the bankruptcy court's nondischargeability judgment.

15