**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re:<br>THOMAS JOHN SHAYMAN,<br>　　　　　Debtor. | BAP No. CC-23-1071-CSG<br><br>Bk. No. 1:21-bk-10251-MT |
| THOMAS JOHN SHAYMAN,<br>　　　　　Appellant,<br>v.<br>LEILA AQUINO,<br>　　　　　Appellee. | Adv. No. 1:21-ap-01025-MT<br><br>**MEMORANDUM***  |

Appeal from the United States Bankruptcy Court
for the Central District of California
Maureen A. Tighe, Bankruptcy Judge, Presiding

Before: CORBIT, SPRAKER, and GAN Bankruptcy Judges.

**INTRODUCTION**

After a business and personal relationship soured, Thomas John Shayman ("Shayman") and Leila Aquino ("Aquino") sued each other in state court for alleged wrongs and debts due and owing. The jury found in favor of Aquino exclusively, awarding her $428,192.97. When Shayman filed a chapter 7[1] bankruptcy petition, Aquino brought an adversary proceeding to except the

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, all "Civil Rule" references are to the Federal Rules of Civil Procedure.

1

state court judgment from discharge pursuant to § 523(a)(2)(A) (false pretenses, a false representation, or actual fraud) and § 523(a)(4) (fiduciary fraud or defalcation).

The bankruptcy court granted summary judgment on both claims based on issue preclusion.[2] With respect to the § 523(a)(2)(A) claim, we AFFIRM. However, we determine that the bankruptcy court erred in granting summary judgment on Aquino's § 523(a)(4) claim because it is unclear what issues were actually and necessarily decided in the state court action that established the elements of § 523(a)(4). As a result, we VACATE that portion of the judgment and REMAND to the bankruptcy court for further proceedings consistent with this decision.

## FACTS

### A.    State court litigation

Aquino and Shayman met in 1997 when Shayman hired Aquino to provide various business services for his restaurant, Burbank Bar and Grill. At the time, Aquino was providing the business services through her company Synergy Financials & Management Services, Inc. Over time, Aquino's and Shayman's business relationship developed into a personal relationship.

---

[2] Although Aquino's motion for summary judgment sought an order of nondischargeability pursuant to § 523(a)(2)(A), (a)(4), and (a)(6), the bankruptcy court's order only addressed Aquino's § 523(a)(2)(A) and (a)(4) claims. The bankruptcy court later issued a Civil Rule 54(b) certification and a final judgment as to Aquino's § 523(a)(2)(A) and (a)(4) claims. Accordingly, only those two claims are subject to this appeal.

### 1. Aquino's cross-complaint

After their personal relationship ended in 2013, Shayman sued Aquino in Los Angeles County Superior Court, alleging conversion, breach of fiduciary duty, fraudulent misrepresentation, and unjust enrichment against Synergy and Aquino. Aquino brought a cross-complaint (the "Cross-Complaint") against Shayman and Harry Klein ("Klein"), who was the sole trustee of a family trust ("Shayman Trust") of which Shayman was the beneficiary ("State Court Action").[3]

### a. Acquisitions Unlimited, LLC

In the Cross-Complaint, Aquino specifically alleged that Shayman committed breach of contract, breach of fiduciary duty, and fraud when he failed to split certain proceeds related to their joint real estate investment.

Aquino stated that in 2002 she and Shayman entered into a joint business venture by forming Acquisitions Unlimited, LLC ("Acquisitions"), a Nevada limited liability company to hold certain real properties purchased as an investment. Aquino alleged that when they formed Acquisitions, she and Shayman agreed to be equals in all things including ownership, management rights, and profits. Aquino also stated that she and Shayman agreed that each of them would always act in the best interest of one another when it came to the business of Acquisitions.

In 2003, Acquisitions purchased three townhomes in Henderson, Nevada (the "Condos"). In the Cross-Complaint, Aquino asserted that in 2005, when the

---

[3] *Burbank Management Group, Inc. dba Canyon Grille v. Synergy Financials & Mgmt. Services, Inc., et al.*, case no. BC584799 consolidated with case no. BC615815.

value of the Condos approximately doubled, Aquino wanted to sell the Condos and split the profits. According to Aquino, Shayman disagreed. Rather, Shayman thought that they should keep the Condos, take out a home equity loan, and split the loan proceeds 50/50. Aquino alleged that she finally agreed. Accordingly, Shayman on behalf of Acquisitions, obtained a home equity line of credit in the amount of $242,000 secured by the Condos ("HELOC Funds"). Aquino alleged that instead of splitting the HELOC Funds as agreed, Shayman used the HELOC Funds for personal use and for expenses related to his separate company, the Burbank Bar and Grill. Aquino alleged that when she demanded payment of her half of the HELOC Funds ($121,000 plus interest since 2005) early on and then again in 2013, Shayman refused.

Aquino alleged that Shayman's failure to split the HELOC Funds as agreed was a breach of contract. Without any additional facts or analysis, except a reference to their personal relationship, Aquino alleged that Shayman's failure to split the HELOC Funds as agreed also qualified as a breach of fiduciary duty and fraud.

### b.    Burbank Management Group, Inc.

Aquino also alleged that Shayman committed breach of contract, breach of fiduciary duty, fraud, and intentional interference with prospective economic advantage when he refused to give her stock in his new company as promised.

Aquino alleged that in April 2013 Shayman and Klein formed a new company, Burbank Management Group, Inc., dba Canyon Grille ("BMG"). According to Aquino, after forming the company, Shayman needed a person

4

with good credit and management skills for BMG and someone who could provide capital for initial business expenses.

Aquino alleged that on or about January 2, 2014, Aquino, Shayman, and Klein entered into an agreement whereby Aquino would serve as a signatory and controller of the operating accounts for BMG and in exchange Shayman and Klein would give her 50% of the outstanding stock of BMG ("BMG Stock Agreement"). Aquino maintained that in reliance on the promises in the BMG Stock Agreement, she made loans to Shayman and the Shayman Trust for startup costs related to BMG.[4] Aquino further maintained that she performed all conditions, covenants, and promises required by her in accordance with the terms and conditions of the BMG Stock Agreement. This performance included fulfilling her duties as controller and signatory by applying for and obtaining a liquor license for BMG, opening bank accounts and merchant accounts on her credit, and obtaining various other licenses needed for BMG to operate. However, Aquino never received the promised shares in BMG.

Aquino alleged that Shayman's failure to perform under the BMG Stock Agreement was a breach of contract. Aquino stated that it was undisputed she would receive 50% of the outstanding stock of BMG if she provided certain services. Aquino alleged that she performed her part of the agreement and all that was left was for Shayman to perform, but he refused. Therefore, Aquino concluded that Shayman breached the BMG Stock Agreement.

---

[4] Aquino stated that she loaned a total of $57,352.00 which included $2,352.00 for a liquor license, $5,000.00 for initial restaurant supplies, $10,000 for professional services, and $40,000 for attorney fees.

Aquino also alleged that Shayman's failure to perform under the BMG Stock Agreement was a breach of fiduciary duty. Aquino asserted that because she, Shayman, and Klein were partners in the joint venture they owed a fiduciary duty to each other. Aquino alleged that Shayman breached his fiduciary duty "by repudiating the agreement entitling Aquino" to 50% of BMG's outstanding stock.

Aquino further alleged that Shayman committed fraud because he had no intention of performing his obligations when he made the agreement. Therefore, Aquino concluded that Shayman made the representations with the intent to defraud and deceive her into providing BMG the needed capital and services. Aquino alleged that she reasonably relied on Shayman's promise, and she acted in reliance of the promise that she would get 50% of BMG's outstanding stock. Aquino alleged that she was damaged in the amount of her loans to BMG and additional damages to be proven at trial but estimated at $2 million.

Finally, Aquino alleged that Shayman's failure to perform under the BMG Stock Agreement was an intentional interference with her prospective economic advantage. Aquino alleged that she and Klein had a meeting sometime in 2013 and at the meeting Klein agreed that Aquino was owed backpay for business and other services she had provided "over the years." Klein allegedly executed a note in favor of Aquino for $502,648. The terms of the note required monthly payments (which payments Aquino maintained were never made) and the note was secured by a piece of real property held by the Shayman Trust. Aquino alleged that when Shayman discovered the arrangement between Aquino and

6

Klein, Shayman initiated the State Court Action and threatened to also sue Klein "if he fulfilled the terms of the agreement" with Aquino. Aquino alleged that Klein refused to pay her as agreed because he did not want to be sued by Shayman.

## 2. Jury's special verdict findings

In the State Court Action, after a multi-day jury trial, the jury found in favor of Aquino and against Shayman. The jury verdict form (the "Jury Form") did not identify the causes of action adjudicated. Rather, the Jury Form included the jury's answers to 31 special interrogatories. Relevant to this appeal, the jury specifically responded to the following special interrogatories as indicated below:

JURY'S SPECIAL VERDICT FINDINGS

1.  Was Leila Aquino an agent and/or corporate officer of BMG? <u>Yes</u>

2.  Did Leila Aquino act of behalf of BMG for purposes of serving as controller and signatory on its bank accounts? <u>Yes</u>

10.  Did Thomas Shayman enter into an agreement with Leila Aquino to act as the controller and signatory of the bank accounts of BMG, and in exchange, agree to grant Aquino 50% of the stock of BMG? <u>Yes</u>

11.  Did Thomas Shayman enter into an agreement with Aquino regarding the repayment of Aquino's money? <u>Yes</u>

12.  Did Aquino do all, or substantially all, of the significant things that the contract required her to do? (*The jury was asked to respond to both "Shares" and "Money" for the next several questions*). Shares? <u>Yes</u> / Money? <u>Yes</u>

13.  Did all the conditions that were required for Shayman's performance occur? Shares? <u>Yes</u> / Money? <u>Yes</u>.

7

14. Did Shayman fail to do something that the contract required him to do? Shares? Yes / Money? Yes.

15. Was Aquino harmed by Shayman's breach of contract? Shares? Yes / Money? Yes.

16. What are Aquino's damages? Shares: $50,000; Money: $21,000

17. Was Shayman an agent of Aquino? Yes.

18. Did Shayman act on Aquino's behalf for purposes of obtaining a $242,000.00 line of credit? Yes.

19. Did Shayman fail to act as a reasonably careful agent would have acted in the same or similar circumstances? Yes.

20. Was Aquino harmed? Yes.

21. Was Shayman a substantial factor in causing Aquino's harm? Yes.

23. What are Aquino's damages? Total: $121,000.00.

24. Did either Shayman or Harry Klein as trustee of the Shayman Trust, make a promise to Aquino? Yes.

25. Did Shayman and/or Harry Klein as trustee of the Shayman Trust, intend to perform this promise when he made it? Shayman: No; Klein: Yes.

26. Did Shayman and/or Harry Klein as trustee of the Shayman Trust, intend that Aquino rely on this promise? Shayman: Yes; Klein: Yes.

27. Did Aquino reasonably rely on this promise? Shayman: Yes; Klein: Yes.

28. Did Shayman and/or Harry Klein as trustee of the Shayman Trust, perform the promised act? Shayman: No; Klein: No.

29. Was Aquino's reliance on Shayman's and/or Harry Klein's as trustee of the Shayman Trust promise a substantial factor in causing harm to Aquino? Shayman: Yes; Klein: Yes.

8

30.   What are Aquino's damages? <u>Lost Profits: $20,000.00</u> / <u>Other past economic loss: $50,000.00</u>.

31.   What is the total amount of money you award against each party? <u>Shayman: $262,000.00</u>; <u>Klein: $0</u>.

The Jury Form demonstrates that the jury did not award Aquino a general amount for all damages nor did the jury award Aquino any punitive or exemplary damages. Rather, the jury awarded Aquino damages in the amount of $121,000 for her claims related to Acquisitions (her half of the HELOC Funds) and damages in the amount of $70,000 for Shayman fraudulently inducing her to enter into the BMG Stock Agreement.

### 3.   State court judgment

Based on the jury's determinations, the state court entered judgment for Aquino on August 9, 2019. The state court entered an amended judgment in the amount of $428,192.97 (which included costs, attorney's fees, and interest) on July 21, 2020 (together, the Jury Form and amended judgment are hereinafter referred to as the "State Court Judgment").

### B.   Shayman's bankruptcy petition and Aquino's adversary complaint

After entry of the State Court Judgment, Shayman filed a chapter 7 bankruptcy petition listing the judgment debt as an unsecured claim. Aquino timely commenced an adversary proceeding seeking to except the State Court Judgment from Shayman's discharge pursuant to § 523(a)(2)(A) and (a)(4).

### 1. Aquino's motion for summary judgment

Aquino moved for summary judgment or, in the alternative, partial summary judgment. Aquino's motion was based solely on the State Court Judgment's alleged issue preclusive effect.

Aquino argued that issue preclusion applied to the State Court Judgment because although the State Court Judgment did not specify that claims for fraud, defalcation, and breach of fiduciary duty were adjudicated, the elements establishing each of those claims was actually litigated and necessarily decided in the State Court Action. Aquino argued that because preclusion applied, there were no genuine issues of material fact, and she was entitled to judgment as a matter of law. Shayman opposed the motion arguing that the State Court Judgment was too vague to support issue preclusion.

### 2. The bankruptcy court's ruling and nondischargeable judgment

Following arguments at the hearing on the summary judgment motion, the bankruptcy court relied on issue preclusion and granted Aquino summary judgment excepting the State Court Judgment from discharge pursuant to § 523(a)(2)(A) and (a)(4).

In its ruling,[5] the bankruptcy court first determined that based on preclusion, $70,000 of the State Court Judgment debt (plus interest at the California statutory interest rate) was nondischargeable pursuant to § 523(a)(2)(A). The bankruptcy court determined that the State Court Judgment conclusively demonstrated that all the elements of a § 523(a)(2)(A) were actually

---

[5] The bankruptcy court first issued a tentative ruling which was later incorporated by reference into its final ruling.

litigated and necessarily decided, despite the lack of a specific finding of fraud. The bankruptcy court determined that: (1) Aquino "alleged facts and asserted a claim for fraud and deceit [in her Cross-Complaint and the issue] was tried and submitted to a jury"; (2) the Jury Form included "factual findings sufficient to rule on the specific cause of action"; and (3) Shayman had not argued that the issue's determination was not "entirely unnecessary" to the judgment in the initial proceeding, citing *Lucido v. Superior Court*, 51 Cal. 3d 335 (1990). Therefore, the bankruptcy court granted Aquino's motion for summary judgment on her § 523(a)(2)(A) nondischargeability claim based on the issue preclusive effect of the State Court Judgment.

The bankruptcy court next determined that based on issue preclusion, $121,000.00 of the State Court Judgment debt (plus interest) was nondischargeable pursuant to § 523(a)(4). The bankruptcy court determined that based on the allegations in the Cross-Complaint and the State Court Judgment, the jury found each element of a § 523(a)(4) claim, again regardless that the State Court Judgment did not include any explicit findings of an express trust, fiduciary duty, or defalcation.

The bankruptcy court concluded that an express trust existed because there was identifiable property that was entrusted to Shayman. The bankruptcy court next determined that Aquino and Shayman were joint venturers in Acquisitions and therefore were fiduciaries who owed fiduciary duties to each other under California law. Finally, the bankruptcy court determined that because the jury found that Shayman failed to act as a reasonably careful agent would have acted in similar circumstances, the element of defalcation was

11

established. Because the bankruptcy court found that all elements of § 523(a)(4) were actually litigated and necessarily determined in the State Court Action, the bankruptcy court granted Aquino's motion for summary judgment on her § 523(a)(4) nondischargeability claim based on the issue preclusive effect of the State Court Judgment.

The bankruptcy court subsequently entered a judgment excepting the State Court Judgment, in the total amount of $481,277.13 including interest and attorney's fees, from discharge pursuant to § 523(a)(2)(A) and (a)(4) (the "Bankruptcy Judgment").[6]

Shayman timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in granting summary judgment to Aquino on her § 523(a)(2)(A) claim based on issue preclusion?

Did the bankruptcy court err in granting summary judgment to Aquino on her § 523(a)(4) claim based on issue preclusion?

Did the bankruptcy court err in determining that the interest, fees, and costs related to the nondischargeable State Court Judgment debt were also nondischargeable?

---

[6] The initial judgment was amended twice, once to correct the total amount of the judgment and second, after the BAP requested a Civil Rule 54(b) certification and final judgment because the judgment did not address Aquino's claims under § 523(a)(6).

Did the bankruptcy court err in awarding post-judgment interest at the state rate instead of the federal rate?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's summary judgment rulings and its determination to except a debt from discharge. *Ilko v. Cal. State Bd. of Equalization* (*In re Ilko*), 651 F.3d 1049, 1052 (9th Cir. 2011). We review de novo the bankruptcy court's determination that issue preclusion is available. *Lopez v. Emergency Serv. Restoration, Inc.* (*In re Lopez*), 367 B.R. 99, 103 (9th Cir. BAP 2007). We also review de novo the bankruptcy court's interpretation of "the law governing pre- and postjudgment interest." *Hamilton v. Elite of L.A., Inc. (In re Hamilton*), 584 B.R. 310, 318 (9th Cir. BAP 2018), *aff'd*, 785 F. App'x 438 (9th Cir. 2019). When we review a matter de novo, we give no deference to the bankruptcy court's decision. *See Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

If we determine that issue preclusion is available, we then review the bankruptcy court's decision to apply it for an abuse of discretion. *In re Lopez*, 367 B.R. at 103. A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings of fact are illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011); *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

## DISCUSSION

### A. Summary judgment and issue preclusion

#### 1. Summary judgment standards

Summary judgment is appropriate when the pleadings and supplemental materials show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civil Rule 56(a) (incorporated by Rule 7056); *Roussos v. Michaelides* (*In re Roussos*), 251 B.R. 86, 91 (9th Cir. BAP 2000), *aff'd*, 33 F. App'x 365 (9th Cir. 2002). "A properly-supported summary judgment motion cannot be defeated by the mere existence of some alleged factual dispute . . . ." *Id.* "[T]he requirement is that there be no **genuine** issue of **material** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). In reviewing a motion for summary judgment, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Because Aquino's motion for summary judgment is based solely on issue preclusion, there are no disputed facts. Consequently, summary judgment is appropriate only if issue preclusion is available and the elements of Aquino's nondischargeability claims are established as a matter of law by the State Court Judgment. *See Newman v. Lee (In re Newman)*, BAP No. CC-21-1250-GTL, 2022 WL 2100905, at *4 (9th Cir. BAP June 10, 2022).

14

### 2. California issue preclusion elements and standard

Issue preclusion applies in § 523(a) discharge exception proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991); *see also* 28 U.S.C. § 1738 (federal courts must give "full faith and credit" to state court judgments). Bankruptcy courts may apply the doctrine to an existing state court judgment as the basis for granting summary judgment. *Khaligh v. Hadaegh* (*In re Khaligh*), 338 B.R. 817, 832 (9th Cir. BAP 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007). Issue preclusion in nondischargeability proceedings is governed by the preclusion law of the state in which the judgment was issued, which in this case is California. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001).

In California, issue preclusion prevents a party from relitigating a previously decided issue if: (1) the issue is identical to that decided in the first suit; (2) the issue was actually litigated in the first suit; (3) the issue was necessarily decided in the first suit; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 462 (9th Cir. BAP 2015) (citing *Lucido*, 51 Cal.3d at 341). The court must additionally assess "whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy." *In re Khaligh*, 338 B.R. at 824-25 (citing *Lucido*, 51 Cal.3d at 342-43).

In California, "an issue is 'actually litigated' when it is properly raised by a party's pleadings or otherwise, when it is submitted to the court for determination, and when the court actually determines the issue." *In re Harmon*,

15

250 F.3d at 1247 (citing *People v. Sims*, 32 Cal. 3d 468, 484 (1982)); *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511 (2009). To conclude that an issue was "necessarily decided," California courts "require[] only that the issue not have been 'entirely unnecessary' to the judgment in the initial proceeding." *Lucido*, 51 Cal. 3d at 342. California courts have also held that if an issue is determined to have been necessarily decided in a prior proceeding, the issue was actually litigated. *In re Harmon*, 250 F.3d at 1248.

The party asserting preclusion bears the burden of establishing the threshold requirements. *Id.* at 1245. This means providing "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir. 1996). Ultimately, "[a]ny reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the [issue preclusive] effect." *Id.*

Both summary judgment and the doctrine of issue preclusion potentially permit the entry of final orders or judgments without further proceedings. Because of their potential to foreclose further proceedings, a ruling granting summary judgment based on issue preclusion requires clarity and precision. Clarity and precision not only aid in the Panel's review but, more importantly, ensure that the bankruptcy court properly determined whether a matter was without genuine dispute and established as a matter of law.

## B.    Aquino's § 523(a)(2)(A) claim.

On appeal, Shayman makes a general allegation that the bankruptcy court erred in applying preclusion because the State Court Judgment was too vague.

However, he fails to support this general claim with any specific allegations of error of fact or law related to either preclusion or § 523(a)(2)(A). Interestingly, Shayman appears to concede that the State Court Judgment established that all five elements of Aquino's § 523(a)(2)(A) claim had been litigated and determined. Shayman argues regardless, the bankruptcy court should have considered his "new evidence" which would have demonstrated the jury's determinations were error.[7] For the following reasons, we disagree.

**1. The five elements necessary to establish a § 523(a)(2)(A) claim.**

Section 523(a)(2)(A) excepts from a debtor's discharge any debt for money obtained by false pretenses, a false misrepresentation, or actual fraud. To establish a claim for fraud or misrepresentation under § 523(a)(2)(A), a creditor must demonstrate the following five elements:

> (1) that the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor [justifiably] relied on such representations; and (5) that the creditor sustained alleged loss and damage as the proximate result of such representations.

*Diamond v. Kolcum (In re Diamond)*, 285 F.3d 822, 827 (9th Cir. 2002) (quoting *Household Credit Servs. v. Ettell (In re Ettell)*, 188 F.3d 1141, 1144 (9th Cir. 1999)); *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000). These requirements mirror the elements of common law

---

[7] Shayman's attempts to introduce new evidence solely to negate the jury's determinations and the State Court Judgment are an impermissible collateral attack and "irrelevant in determining the preclusive effect" of the State Court Judgment. *See Killgore Adventures, LLC v. Marek (In re Marek)*, 468 B.R. 406, 411 (Bankr. D. Idaho 2012).

fraud and actual fraud under California law. *Tobin v. San Souci Ltd. P'ship (In re Tobin)*, 258 B.R. 199, 203 (9th Cir. BAP 2001). "[A] promise made with a positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A)." *Rubin v. West (In re Rubin)*, 875 F.2d 755, 759 (9th Cir. 1989).

**2.      The bankruptcy court's determinations as to each § 523(a)(2)(A) element.**

In this case, the bankruptcy court correctly acknowledged that the State Court Judgment could satisfy issue preclusion without a specific finding of fraud as long as the prior decision established all the facts necessary to except the debt from discharge under § 523(a)(2)(A). *See e.g. Pemstein v. Pemstein (In re Pemstein)*, 492 B.R. 274, 283 n.19 (9th Cir. BAP 2013) (acknowledging the same principle for purposes of § 523(a)(4) with respect to the term "defalcation"); *Lucido*, 51 Cal. 3d at 342 ("The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same.").

The bankruptcy court methodically went through each § 523(a)(2)(A) element and then identified the corresponding jury response that the bankruptcy court determined established that element.

**a.      The debtor made a representation.**

First, the bankruptcy court determined that the jury found that Shayman made a representation, the first element of a § 523(a)(2)(A) fraud claim. The bankruptcy court pointed to jury response no. 10 in which the jury responded "yes" to the question, "Did Thomas Shayman enter into an agreement with Leila Aquino to act as the controller and signatory of the bank accounts of BMG,

18

and in exchange, agree to grant Aquino 50% of the stock of BMG?" The bankruptcy court also cited to jury response no. 24 in which the jury answered "yes" to the question, "Did either Shayman or Harry Klein as trustee of the Shayman Trust, make a promise to Aquino?" Although the jury simply found that Shayman or Klein made a promise to Aquino, the bankruptcy court recognized that the promise referred to in jury response no. 24 was the promise Shayman made related to the BMG Stock Agreement. Shayman has not argued otherwise.

> **b.** **The debtor knew the representation was false at the time it was made.**

The bankruptcy court next determined that the jury found that Shayman knew the representation was false when he made it, the second element of a fraud claim. The bankruptcy court again cited jury response nos. 10 and 24. The bankruptcy court also cited jury response no. 25 in which the jury responded "yes" as to Shayman and "no" as to Klein when answering the question "Did Shayman and/or Harry Klein as trustee of the Shayman Trust, intend to perform this promise when he made it?"

> **c.** **The debtor made the representation with the intention and purpose of deceiving the creditor.**

Next, the bankruptcy court determined that the jury found that Shayman made the promise with the intent to deceive, the third element of a fraud claim. As support, the bankruptcy court cited to Aquino's allegation that Shayman made the promise to induce her to "perform her duties as controller." The bankruptcy court also cited to jury response no. 26 in which the jury responded

"yes" as to both Shayman and Klein when answering the question, "Did Shayman and/or Harry Klein as trustee of the Shayman Trust intend that Aquino rely on this promise?"

### d.     The creditor justifiably relied on the representation.

The bankruptcy court next determined the jury found that Aquino relied on Shayman's representation and also that her reliance was reasonable, the fourth element of a fraud claim. The bankruptcy court cited to jury response no 27 in which the jury responded "yes" to the specific question "Did Aquino reasonably rely on this promise?"

Although the jury found that Aquino "reasonably" relied on Shayman's promise, the bankruptcy court did not err in determining that this finding satisfied the "justifiable" reliance standard under § 523(a)(2)(A). *Field v. Mans*, 516 U.S. 59, 73-77 (1995). This is because reasonable reliance is a more stringent, objective standard. *Id.* at 77 (reasonable reliance "clearly exceeds the demand of justifiable reliance"); *Citibank (South Dakota), N.A. v. Eashai* (*In re Eashai*), 87 F.3d 1082, 1090-91 (9th Cir. 1996) (explaining § 523(a)(2)(A) requires only justifiable rather than reasonable reliance). A person may justifiably rely on a representation even if its falsity could have been discovered upon investigation. *Romesh Japra, M.D., F.A.C.C., Inc v. Apte* (*In re Apte*), 180 B.R. 223, 229 (9th Cir. BAP 1995), *aff'd*, 96 F.3d 1319 (9th Cir. 1996). Typically, then, if reliance is found to be reasonable, it also meets the lesser, subjective standard of justifiable reliance. *Tallant v. Kaufman* (*In re Tallant*), 218 B.R. 58, 69 n.15 (9th Cir. BAP 1998). In this case, we find no clear error in the bankruptcy court's finding that the jury's determination that Aquino reasonably relied on the representations

20

Shayman made as part of the BMG Stock Agreement also satisfied § 523(a)(2)(A)'s justifiable reliance requirement.

### e. The creditor sustained alleged loss and damage as the proximate result of the representation.

Lastly, the bankruptcy court determined that the jury found Aquino suffered damages as a result of Shayman's misrepresentations, the last element of a claim for fraud. The bankruptcy court cited to jury responses nos. 27-30 in which the jury specifically found that Aquino's reliance on Shayman's promise was a "substantial factor in causing harm to Aquino." The jury then found that the harm was $20,000 in lost profits and $50,000 in other past economic loss.

### 3. The bankruptcy court's application of issue preclusion.

Based on the foregoing, the bankruptcy court determined that the issue of Shayman's fraud had been litigated and decided in the State Court Action despite no specific finding of fraud. The bankruptcy court determined that the issue of fraud was actually litigated because Aquino properly raised a claim of fraud in her Cross-Complaint based on Shayman's fraudulent inducement and failure to perform under the BMG Stock Agreement. The bankruptcy court determined that the claim of fraud was necessarily determined because each factual element of a claim for fraud was determined by the jury and the issue of fraud was not "entirely unnecessary" to the State Court Judgment. According to the bankruptcy court, a determination of fraud "was necessary to in [sic] order to secure a judgment in favor of Plaintiff."

### 4. The bankruptcy court did not abuse its discretion in applying issue preclusion to Aquino's § 523(a)(2)(A) claim.

Although the State Court Judgment could have been clearer as to which of Aquino's claims were adjudicated, the bankruptcy court did not err in determining that the elements of § 523(a)(2)(A) were actually litigated and necessarily determined in the State Court Action as a matter of law. The bankruptcy court correctly concluded that the promise referred to in jury response no. 24 was Shayman's promise related to the BMG Stock Agreement. The jury responses that followed also related to the BMG Stock Agreement based on the grouping of the jury questions and responses. Although Aquino pled four separate causes of action related to Shayman's failure to perform under the BMG Stock Agreement (fraud, breach of contract,[8] breach of fiduciary duty,[9] and intentional interference with prospective economic advantage[10]), only fraud includes the elements of a false representation made with an intent to deceive or coerce the other party. Thus, the jury's determination that

---

[8] In California, the elements of a cause of action for breach of contract are (1) the existence of the contract; (2) the plaintiff's performance; (3) the defendant's breach (failure to perform); and (4) the resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

[9] Under California law, the elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach. *Oasis W. Realty, LLC*, 51 Cal. 4th at 820.

[10] In California, the elements of a claim for intentional interference with prospective economic advantage are 1) an economic relationship between the plaintiff and third party containing the probability of future economic benefit to the plaintiff, 2) knowledge by the defendant of the existence of the relationship, 3) intentional acts on the part of the defendant designed to disrupt the relationship, 4) actual disruption of the relationship, and 5) damages to the plaintiff proximately caused by the acts of the defendant. *Visto Corp. v. Sproqit Techs., Inc.*, 360 F.Supp.2d 1064, 1066 (N.D. Cal. 2005).

Shayman made a false representation with the intent of Aquino relying on the false representation to her detriment, was only necessary if the jury adjudicated Aquino's fraud claim. *See Baldwin v. Kilpatrick (In re Baldwin)*, 249 F.3d 912, 919 (9th Cir. 2001) (holding that although the state court default judgment did not make an express finding on an issue, the issue was "necessarily decided" because judgment could not have been rendered without finding all elements of the claim met); *Choi v. Kim (In re Kim)*, Bk. No. 99-03303, 2003 WL 22939483, at *3 (Bankr. D. Haw. Jan. 10, 2003) (A "court must presume that the prior judgment was correct and . . . that the prior court made all of the findings and conclusions . . . needed to support the judgment [and therefore,] [e]ach of those necessary findings and conclusions has preclusive effect even if the state court did not explicitly state them.") (citation omitted).

On this record, we conclude that issue preclusion was available with respect to Aquino's § 523(a)(2)(A) claim based on the State Court Judgment and we determine that the bankruptcy court did not abuse its discretion in applying issue preclusion to the State Court Judgment. Furthermore, because there was no genuine dispute of material fact for the bankruptcy court to adjudicate, it did not err in granting summary judgment in Aquino's favor and finding that a portion of the State Court Judgment debt was nondischargeable pursuant to § 523(a)(2)(A).

## C.    Aquino's § 523(a)(4) claim.

Shayman argues that the bankruptcy court abused its discretion in applying preclusion because the State Court Judgment provided an insufficient basis for finding a fiduciary relationship between he and Aquino. Shayman also

argues that the State Court Judgment is not clear as to "which transaction the jury found there to be a fiduciary relationship." We agree that the bankruptcy court erred in determining that issue preclusion was available for Aquino's § 523(a)(4) claim.

### 1. The elements of § 523(a)(4).

Section 523(a)(4) excepts from discharge "any debt for fraud or defalcation while acting in a fiduciary capacity." To prevail on a nondischargeability claim under § 523(a)(4), a plaintiff must allege and demonstrate that (1) there was an express trust; (2) the debtor was acting as a fiduciary to the creditor at the time the debt arose; and (3) the debt arose from the debtor's defalcation. *Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1459 (9th Cir. 1997), *abrogated on other grounds by Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274 (2013).

The broad definition of fiduciary under nonbankruptcy law—a relationship involving trust, confidence, and good faith—is inapplicable in the dischargeability context. For purposes of § 523(a)(4), the Ninth Circuit has adopted a narrow definition of "fiduciary" as a relationship "arising from an express or technical trust that was imposed before, and without reference to, the wrongdoing that caused the debt." *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1125 (9th Cir. 2003) (citations omitted). These requirements necessarily exclude constructive, resulting, or implied trusts. *See Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986) (citing *Runnion v. Pedrazzini (In re Pedrazzini)*, 644 F.2d 756, 759 (9th Cir. 1981)).

**2.  The bankruptcy court erroneously determined that each element of Aquino's § 523(a)(4) claim was established by the State Court Judgment as a matter of law.**

As noted above, entry of summary judgment based on issue preclusion demands that the bankruptcy court employ clarity and precision when determining whether each element of a claim is established as a matter of law. Here, the bankruptcy court properly identified each of the three required elements that Aquino had to establish to prevail on her § 523(a)(4) claim. The bankruptcy court, however, erred in its determination that each of the elements was established by the State Court Judgment as a matter of law. Accordingly, the bankruptcy court abused its discretion in applying issue preclusion.

One of the necessary elements of a § 523(a)(4) claim is that the debt arose from the debtor's fraud or defalcation. Defalcation has two elements: a breach of a fiduciary duty and a culpable state of mind. *Maxwell v Maxwell (In re Maxwell)*, 509 B.R. 286, 289 (Bankr. E.D. Cal. 2014). A breach of fiduciary duty entails "misappropriation of trust funds or money held in any fiduciary capacity; [or] the failure to properly account for such funds." *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1186 (9th Cir. 1996) (internal alteration omitted); *In re Pemstein*, 492 B.R. at 282. Breach of fiduciary duty includes "wrongfully taking trust property, engaging in self-dealing with trust property for . . . [the fiduciary's] own profit, and failing to provide a full accounting." *Tomasi v. Savannah N. Denoce Tr. (In re Tomasi)*, No. CC-12-1401-KiTaD, 2013 WL 4399229, at *12 (9th Cir. BAP Aug. 15, 2013); *In re Pemstein*, 492 B.R. at 282-83.

Additionally, defalcation requires a "culpable state of mind . . . involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock*, 569 U.S. at 269 (2013). Conduct satisfying this state-of-mind requirement includes "conduct that the fiduciary knows is improper" or when the fiduciary "consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will . . . violate a fiduciary duty." *Id.* at 74 (internal quotation marks and citations omitted). Further, the risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.*

Although the bankruptcy court recited the applicable intent standard as announced in *Bullock*, its only reference to evidence that the jury litigated and determined Shayman's intent was the jury finding that Shayman "failed to act as a reasonably careful agent." Specifically, as to this element, the bankruptcy court determined:

> The jury found that when Defendant took the entire $242,000 HELOC Funds, secured by the Condos, to use for his other business and did not repay Plaintiff for her 50% share, [he] failed to act as a reasonably careful agent would have acted in similar circumstances. The actions described in the State Court Complaint and the findings by the jury are sufficient for the Court to find that there is no issue of material fact and Plaintiff is entitled to judgment as a matter of law.

Ruling, Feb. 8, 2023, pg. 7.

We disagree that the jury's finding establishes the element of defalcation as a matter of law. Although the jury determined that Shayman was Aquino's agent and failed to act as a reasonably careful agent would have acted in the same or similar circumstances, there is nothing in the record provided that establishes this finding necessarily and actually established the requisite mental state required by *Bullock*. Aquino, as the party asserting issue preclusion had the responsibility to provide the bankruptcy court a record sufficient to reveal the controlling facts and the exact issues litigated in the first suit.[11] *In re Kelly*, 182 B.R. at 258. There is simply nothing in the record to suggest that the jury was required, or asked, to determine Shayman's mental state as part of Aquino's breach of fiduciary duty claim in the State Court Action.[12]

### 3. The bankruptcy court abused its discretion in applying issue preclusion to Aquino's § 523(a)(4) claim.

Based on the foregoing, Aquino failed to show "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *See In re Plyam*, 530 B.R. at 462. Rather, there is reasonable doubt about

---

[11] Aquino provided the bankruptcy court with little evidence despite the fact that the State Court Action involved a multi-day trial with litigation lasting over a year. In support of her assertion that California preclusion law both applied and was satisfied, Aquino introduced: (1) her Cross-Complaint; (2) Shayman's verified answer to the Cross-Complaint; (3) a portion of Shayman's deposition testimony; and (4) the State Court Judgment. We note that Aquino did not provide the bankruptcy court: (1) a copy of the trial transcript (or its equivalent as allowed by California Rules of Court 8.130(h) and 8.134); (2) a copy of the jury instructions; or (3) a copy of any exhibits or documents admitted as evidence during the trial.

[12] Although there may be evidence demonstrating that Shayman's intent when taking the HELOC Funds satisfies the *Bullock* standard, Aquino's motion for summary judgment relied on issue preclusion and did not present such evidence to the bankruptcy court.

what was decided in the State Court Judgment. Reasonable doubt that an issue was actually and necessarily decided in a prior action should be "resolved against applying issue preclusion." *In re Lopez*, 367 B.R. at 108; *Frankfort Digit. Servs., Ltd. v. Kistler (In re Reynoso)*, 477 F.3d 1117 (9th Cir. 2007); *Genesis VJ, Inc. v. Nguyen (In re Nguyen)*, BAP No. CC-11-1379-LaPaMk, 2012 WL 603680, at *7 (9th Cir. BAP Feb. 17, 2012) ("As a matter of fairness, when faced with serious questions about the scope of a ruling, the bankruptcy court should err on the side of caution and avoid applying issue preclusion when a state court's exact determination is ambiguous.").

Accordingly, based on this record, we conclude that issue preclusion was not available with respect to Aquino's § 523(a)(4) claim and the bankruptcy court abused its discretion in applying issue preclusion to the State Court Judgment. Likewise, because factual issues remain, the bankruptcy court erred in granting Aquino summary judgment on her § 523(a)(4) claim.[13] *See In re Pemstein*, 492 B.R. at 284 (remanding for the bankruptcy court to determine whether the state court findings satisfied the "standard established in *Bullock*"). As a result, there are issues of fact that must be resolved before the bankruptcy court can determine the § 523(a)(4) claim.

---

[13] Because we find that the bankruptcy court erred in determining that the element of defalcation was established as a matter of law based on the State Court Judgment, we need not determine whether the bankruptcy court erred in determining the remaining elements of the § 523(a)(4) claim were established as a matter of law. However, upon remand we urge the parties to be clear as to whether the parties were partners or joint venturers and whether agency or membership in a limited liability company is a basis for the nondischargeability claim under § 523(a)(4).

**D.    Shayman waived his claim as to the nondischargeability of prejudgment attorneys' fees, costs, and interest.**

Shayman argues that the bankruptcy court erred in determining that the prejudgment interest the State Court Judgment accrued while the issue of nondischargeability was before the bankruptcy court, was nondischargeable. Shayman also argues that the state court erred in awarding attorney's fees to Aquino. There is no evidence that Shayman made either argument to the bankruptcy court. Indeed, the record indicates that the bankruptcy court specifically gave Shayman the opportunity to brief the issues but Shayman "declined to brief the issues of whether Plaintiff was entitled to prejudgment interest and whether finding an attorney's fee award nondischargeable under *Bartenwefer*[14] was appropriate in this case." Because Shayman failed to raise the issues before the bankruptcy court, he has waived them on appeal. *See Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018) (usual rule is that arguments raised for the first time on appeal are deemed forfeited).

**E.    The nondischargeable judgment debt should continue to accrue interest at the state rate.**

Shayman argues on appeal that the bankruptcy court erred in granting Aquino post-judgment interest on the nondischargeable debt at the California rate instead of at the federal rate. Shayman further argues that because Aquino did not specifically request interest in her motion for summary judgment, he had no chance to oppose or brief the issue. Therefore, Shayman asserts that the

---

[14] *Bartenwerfer v. Buckley (In re Bartenwerfer)*, 613 B.R. 730, 735 (9th Cir. BAP 2020), *aff'd*, No. 20-60020, 2021 WL 3560671 (9th Cir. Aug. 12, 2021).

29

issue should be remanded to the bankruptcy court. Shayman's argument is without merit.

Contrary to Shayman's assertions, where the underlying debt has been previously determined prepetition, § 523 only allows a bankruptcy court to determine whether a debt is dischargeable. *In re Hamilton*, 584 B.R. at 323. Section 523 does not permit a bankruptcy court to modify the amount of the debt or adjust the applicable rate of interest. *Id*. Furthermore, because the bankruptcy court did not have the discretion not to award the interest on the nondischargeable debt, there was no reason to allow briefing on the issue.

Therefore, in this case, as in *Hamilton*, the Bankruptcy Judgment merely established that a portion of the underlying State Court Judgment debt was nondischargeable. It did not constitute a new money judgment under federal law. Accordingly, interest on the "nondischargeable judgment debt should continue to accrue at the state rate, even after the bankruptcy court determines the nondischargeability of the debt." *Id.*

Thus, the bankruptcy court did not err in awarding Aquino postjudgment interest on the nondischargeable debt at the California statutory rate.

## CONCLUSION

The bankruptcy court did not err in granting summary judgment in favor of Aquino on her § 523(a)(2)(A) claim that the $70,000 the jury awarded her for Shayman's fraud related to the BMG Stock Agreement was nondischargeable based on the preclusive effects of the State Court Judgment. Further, the bankruptcy court did not err in determining that interest, costs, and fees related to that portion of the State Court Judgment were also nondischargeable.

30

Similarly, the bankruptcy court did not err in recognizing that Aquino was entitled to post-judgment interest on the portion of the nondischargeable debt at the California statutory rate. We AFFIRM these portions of the bankruptcy court's decision.

However, the bankruptcy court erred in granting summary judgment in favor of Aquino on her § 523(a)(4) claim that the $121,000 previously awarded for the failure to turnover her half of the HELOC funds was nondischargeable based on the preclusive effects of the State Court Judgment. Therefore, we VACATE that portion of the bankruptcy court's decision and REMAND to the bankruptcy court for further proceedings consistent with this decision.